## Case No. 3,703.

### DEAN et al. v. ANGUS.

[Bee, 378.][1]

Admiralty Court of Pennsylvania.  1785.

SHIPPING—CAPTAIN's MISCONDUCT — LIABILITY TO OWNERS.

1. Under what circumstances owners of vessels ought to recover against the captains they employ for damages suffered in consequence of their misconduct.

2. Captains are not answerable for losses arising from unavoidable accidents, mere errors of judgment, or failure of success, after having exercised all reasonable diligence and discretion.

Judgment on the merits. [A plea to the admiralty jurisdiction was previously overruled. See Case No. 3,702.]

The bill filed in this cause states, that John Angus, being commander of the brig Hibernia, belonging to Joseph Dean and others, did, on a certain day, without any licence, order, or authority from his owners, and without any probable cause of capture, with a view to his own private interest and emolument, combine and confederate with certain malefactors, and did pursue and take the brigantine Betsey, then in the possession of Silas Talbot, commander of the sloop Argo, as lawful prize and booty of war.

[1] [Reported by Hon. Thomas Bee, District Judge.]

And that the said John Angus, not being ignorant of the premises aforesaid. but well knowing the same, and intending to deprive the said Silas Talbot of his prize, and to defraud and injure, as much as in him lay, his owners, the libellants in this cause, did cause the brigantine Betsey to be sent to places unknown, &c. whereby she was lost, &c. The bill then goes on to state, that. for this cause, the said Silas Talbot did afterwards file his bill in this court against the said John Angus, and against his owners, the present libellants, and also against certain other persons, in the said bill named, for the wrong and injury done, and did, by the sentence and decree of this court, recover against them the sum of £12,700. 5s. damages, with costs of suit. Whereupon, an appeal was entered to the honourable the high court of errors and appeals of this commonwealth, in the prosecution and final issue whereof the said Silas Talbot did recover against the appellants the sum of £11,141. 5s. 4d. of which sum the libellants in this cause were compelled, and did actually pay the sum of £4,000; and, also, that they had expended the further sum of £450 in defending themselves against the bill of the said Silas Talbot, and in prosecuting their said appeal. Whereupon, they now pray judgment against the said John Angus, for reparation of the damage and loss they have so sustained.

I have found it necessary to the determination of the present question, to consider it under the three following points of view, viz.: 1st. How far the cause, now before the court, may be considered as connected with, or determined by, the decree in the Case of Silas Talbot. 2d. Under what circumstances, owners of vessels ought to recover against the captains they employ, for damages suffered in consequence of their misconduct. And, 3d. The specific circumstances of the present case, as they stand on the testimony; or, what is called the merits of the cause.

As to the first point. I can see no connexion between this cause and the Case of Silas Talbot, further than this. that as it originates from the same transaction, to wit. a taking a prize on the high seas. the jurisdiction is thereby determined. In all other respects, the two causes proceed on different principles. The points in view in Talbot's Case were, how far owners of vessels were answerable for torts committed by the captains they employ; and whether the taking in question was, in fact, such a tort, as they ought to be answerable for. The objects in the present case are, under what circumstances, owners may recover against their captains; and whether Angus was or was not particeps criminis, with the wrongdoers in Talbot's Case. The complexion of the two causes being thus manifestly different. it cannot, with any reason, be admitted, that the testimony or decree founded

thereupon, in the former, should be conclusive in the present case. The decree in Talbot's Case was against certain persons who, by stipulation, had made themselves responsible for the issue of that suit. It is not inconsistent with the record of that decree, for Captain Angus, who was not one of those stipulants, and who was no party to that suit, to come in now, and make his specific defence, when personally called upon to answer, and shew that he was not one of the wrong-doers against whom that decree was obtained.

On the second point, viz. under what circumstances owners of vessels ought to recover against the captains they employ, for damages suffered in consequence of their misconduct. It is consonant with reason and authority, that captains are not answerable for losses arising from unavoidable accidents, mere errors of judgment, or failure of success after having exercised all reasonable diligence and discretion. It would be very difficult, and is at present unnecessary, to delineate the particular circumstances, and kinds of misconduct, which should render a captain responsible to his owners. Every case that occurs, must be judged of by its own peculiar circumstances. The present libel states. "That John Angus did, without any authority from his owners, combine with certain malefactors, and, without probable cause of capture, take the brig Betsey, then in the possession of Silas Talbot, as prize and booty of war. And that he did this, not ignorantly, but well knowing the circumstances, and with a view to injure the said Silas Talbot, and also his owners, as much as in him lay." If these charges are supported by the testimony now before the court, there can be no doubt but that he ought to be answerable to his owners for whatever they have suffered in consequence of this transaction.

And this leads to the third point, viz. the consideration of the specific circumstances of the case, as exhibited by the testimony; or, the merits of the cause. The facts, so far as they respect Captain Angus, appear to be in substance as follows: Angus sailed on a trading voyage to Teneriffe, in the armed letter of marque brig Hibernia, in company with the brigs Patty and Achilles, also letters of marque, and bound to some ports in Europe, under the commands of Captains Prole and Thomson. Angus had received written instructions from his owners (the present libellants) to keep company with the two brigs so long as he should think it prudent, and had their approbation to cruize with them on the coast for two or three weeks, if they should so agree. At Reedy Island, in the Delaware, a consultation was had between the three captains, and Prole was appointed commodore. Two or three days after they had got out to sea, they discovered a brig and a sloop at a distance. Prole gave orders to chase, which was done. Prole and Thomson, under British colours, came up with and took the brig; but the Hibernia, being a dull sailer, was left four or five miles astern. When she came up, however, Captain Angus inquired what the captured vessel was, and was informed by Prole or Thomson, that she was a good prize, bound from Montserrat to New-York. To which Angus replied, that if the brig was prize, the sloop (then in sight) must be so too, and asked why one of their fast sailing brigs did not pursue her. To which it was answered, that they did not choose to leave the prize till they saw her well manned, and ordered him to chase the sloop; which he accordingly did for two or three leagues; but finding he could not come up with her, he hauled his wind, and beat up again for the other brigs; but did not reach them till just before dark. Prole then sent a boat to Angus, demanding two of his hands to help man the prize, forwarding, at the same time, a paper for Angus to sign; which appears to have been orders drawn up by Prole, and signed by him and Thomson, for the prizemaster they had put on board the captured brig. Angus hastily signed this paper on the binnacle, and sent the two men required. The wind blowing very fresh, the sea running high, and the night coming on, the four brigs separated, and saw each other no more. From this detail it is manifest, that Angus had no opportunity of acquiring information of those circumstances which were the ground of condemnation against the respondents in the suit of Silas Talbot. The assurance of Prole, the commodore, that the Betsey was good prize, was, in the then situation of affairs, sufficient to convince Angus that there must have been, at least, probable cause of capture; and if the enterprize had been a successful one, which he had no substantial reason to doubt, Angus would not have been justifiable in neglecting any thing, on his part, to secure to his owners a share of the booty taken, or to add thereto by endeavouring to take the sloop also. The only circumstance which hath a direct tendency to criminate Captain Angus, is his signing the orders to the prizemaster put on board the Betsey, directing him to "keep to the southward, for fear of falling in with the Argo." There are two ways in which this may, very naturally, be accounted for; neither of which are in the least contradicted by the testimony, viz. that in the hurry of the transaction, the boat waiting alongside, the sea rough, and night coming on, he signed these orders without reading them, having confidence in those who had drawn them up and signed before him; or, that, according to his first conclusion, if the brig was prize, the sloop must be so too, he still conceived the Argo to be an enemy, and therefore to be avoided by the prizemaster.

But, without having recourse to surmises, I am clearly of opinion, that the libel is not supported by the testimony; that is, there is not sufficient proof, that the respondent "did wilfully and knowingly, and without

probable cause of capture, join with others in taking from Silas Talbot his prize and booty of war." It is manifest, indeed, from the records of the court of appeals, that the libellants have suffered considerable damage, in consequence of this transaction at sea. But, as they had embarked themselves in a suit with real wrong-doers, and suffered judgment to go against them on general principles, without attempting a separate defence, this is no reason why Angus should not now bring forward that specific testimony, with regard to his own conduct, as may exculpate him from the charges laid in the present libel. Some stress has been laid on a passage in the deposition of W—— D——, exhibited in Talbot's Cause, tending to prove that Angus was not so ignorant of the circumstances respecting the Betsey and Argo, as he pretends. The passage is in these words—"Afterwards Captains Prole, Angus and Thomson, in the presence of this deponent, consulted what they should do with the brig Betsey, and being of opinion," &c. Whatever weight this deposition might have had in Talbot's suit, it is inadmissible in the present; but I would observe, that this circumstance is not supported by any other testimony on the records of this court; on the contrary, from the general history of the transaction, there seems to have been no period of time in which Angus could have left his vessel, or the other captains have been on board the Hibernia, to hold this consultation. D—— must, therefore, have been mistaken. Indeed, this is not the only circumstance in which he is singular. For, just before, he says—"The brigs Achilles and Hibernia endeavoured to speak her (meaning the Argo) but could not come up with her. And upon the said Church's saying, that Captain Talbot was not a man that would run away from one of them, if they would not both chase, the brig Achilles then chased alone," &c.

Now, the whole current of testimony agrees in this, that it was the Hibernia, and not the Achilles, that chased the Argo. And, as I remember, in some stages of Talbot's suit, it was urged as a circumstance of aggravation against the owners of the Hibernia, that their captain was employed in driving off the Argo, whilst his confederates were plundering her prize. These observations on D——'s deposition do not directly affect the present question; but I mention them because, if I could find any substantial ground to believe that Angus was indeed particeps criminis with Prole and Thomson, or that he knew, or had any opportunity of knowing, the circumstances which should have prohibited them from making that unfortunate capture, I should not be so clear, as I now am, in adjudging, that the bill in this cause be dismissed, and that the libellants pay the costs of suit.

Whereupon the libellants appealed; and, after long argument, the court adjudged, in June, 1785, that John Angus should pay to the libellants £948. 15s. 10d. with interest thereon from the twenty-second day of January, 1785. [1 Dall. (U. S.) 180.]